**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KRISTOPHER KAHAO AND KENDRA CARTER KAHAO** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 10-846-JJB-DLD** |
| **XACTWARE SOLUTIONS, INC., ET AL.** | |

**MAGISTRATE JUDGE'S REPORT**

This matter is before the court on plaintiffs' motion to remand (rec. doc. 6), which is opposed and has been referred to the undersigned for a report and recommendation (rec. doc. 10). The issue before the court is whether the court has subject matter jurisdiction over this matter based on federal question jurisdiction. See 28 U.S.C. §1331.

**Factual Background**

On December 15, 2010, plaintiffs filed a petition in the 18th Judicial District Court, Parish of West Baton Rouge, State of Louisiana, against defendants Xactware Solutions, Inc. (Xactware), State Farm Fire and Casualty Company (State Farm), and Farmers Insurance Exchange (Farmers) (rec. doc. 1-4). Plaintiffs divided their petition into four sections. The first section sets forth the background and facts relevant to an alleged conspiracy among the defendants to underpay all insurance claims in the homeowner's and construction industries through the use of the Xactimate claims adjusting software. The next three sections set out the plaintiffs' specific claims for relief – a breach of insurance contract claim against Farmers, a products liability claim against Xactware, and a price-fixing claim against State Farm and Farmers. Id.

The petition begins with the section entitled "Formation and Operations of the Combination," which outlines the basis of the alleged conspiracy between the parties and describes the actions taken by parties and non-parties in furtherance of the conspiracy. Id. In this first section of the petition, plaintiffs spend 33 paragraphs outlining allegations to support a conspiracy in the construction and homeowner's insurance industries in Louisiana.

According to plaintiffs, State Farm and Farmers "write policies of insurance covering property, commercial and residential, in the State of Louisiana," and Xactware writes "software programs utilized by Insurers to value covered immovable property damage, commercial and residential, in the State of Louisiana." Id., ¶ 9. State Farm and Farmers and other un-named insurers engaged in a conspiracy "within both the construction and homeowners' insurance industries in Louisiana" to horizontally fix and/or manipulate the prices of repair costs and to devalue the claims paid through the use of the Xactware claims adjusting software. Id., ¶1 and 2. This conspiracy among defendants has adversely affected competition and fair trade within both the construction and homeowner's insurance industries in Louisiana, and as a result, Louisiana insureds are forced to buy commercial or homeowner's insurance that will never provide full coverage for a loss. Id.

Plaintiffs further explain that the following nonparties were "agent[s] of the combination" by taking actions in furtherance of the conspiracy. McKinsey & Company, allegedly one of the most influential advisors in the insurance industry, consulted with its various insurer clients, including Allstate, State Farm, and USAA, and advised them to adopt certain business practices that would result in increased profits, which practices included adopting claims handling procedures to undervalue and underpay claims in an

effort to preserve premiums. Id., ¶¶ 36-40. Verisk Analytics, Inc. (formerly Insurance Services Office (ISO)), is a leading provider of statistical, actuarial, and underwriting information for the property/casualty insurance and risk management industries, and, according to plaintiffs, acts as an agent of the combination by providing a database, computer programs, standard policy forms, and actuarial data on which property and casualty insurers rely to standardize the payment of claims and to set premiums. Id., ¶19. The standardization of premiums and payouts supposedly reduces competition between insurers. Id.

Plaintiffs allege that defendants and other un-named insurers have conspired and coordinated through consultation with McKinsey & Co. and through various organizations and associations to adopt claims handling procedures to limit payouts to amounts below market value through the use of the Xactimate software (manufactured by Xactware), which uses outdated or manipulated damage estimates to reduce the value of claims. Id., ¶¶ 22, 29, 35-40. Plaintiffs contend that using the Xactimate software results in lower payouts to Louisiana insureds and deprives Louisiana insureds of the actual cash value and/or replacement value of their damaged property. Id., ¶ 41.

According to plaintiffs, defendant Farmers began using the Xactimate software as a direct result of consultations with State Farm and other insurers. Id., ¶24. Isabelle Arnold, a Vice-President and the National Mold Manager at Farmers Group for two years beginning in late 2001, is alleged to have routinely discussed claims handling procedures, including the use of estimatics programs like Xactimate, with Farmers' competitors at various seminars, conferences, and summits. Id., ¶26. Plaintiffs represent that Ms. Arnold has acknowledged that although industry executives were aware that the pricing guidelines

in the Xactimate programs were six to ten months out of date, insurers nevertheless continued to use the Xactimate program during catastrophes to avoid payment of repair cost inflation. Id., ¶28. In an effort to standardize the payment of claims, plaintiffs allege that Farmers and State Farm met, along with other insurers, to discuss mold remediation pricing and to conspire to create low mold remediation pricing that was placed on the Xactimate program and used by insurers in the industry, including Farmers Group. Id., ¶27. Finally, plaintiffs represent that Ms. Arnold drafted the mold exclusion currently used by Farmers and various insurers in the insurance industry. Id., ¶31.

Having set out the background of the alleged conspiracy, plaintiffs then assert three separate claims. Plaintiffs assert a breach of their homeowner's insurance contract against Farmers based on Farmers' misrepresentation of portions of the homeowner's policy and denial of coverage for mold damage in plaintiffs' home. See La. R.S. 22:1892, 22:1973. Id.,¶43, ¶51-53. Plaintiffs next assert a claim against Xactware based on the Louisiana Products Liability Act, and seek damages for losses they sustained as a result of having their claims adjusted using Xactware's "Xactimate" adjusting software. Id., ¶54. Finally, plaintiffs assert a claim against State Farm and Farmers for price-fixing under La. R.S. 51:121, *et. seq*. Id., ¶61-65. In the price-fixing claim, plaintiffs contend that State Farm and Farmers conspired to horizontally fix and/or manipulate the prices of repair costs and to devalue all of the claims paid in the homeowner's and construction industries through the use of the Xactimate claims adjusting software, which reduces competition in

the insurance industry. Id. It is this last claim which defendants assert provides this court with federal question jurisdiction.[1]

On December 17, 2010, defendant State Farm removed this matter based on federal question jurisdiction. State Farm submitted documentation to show that it formerly provided plaintiffs with flood insurance policies, and then concluded that plaintiffs' state law claims therefore were subject to the exclusive jurisdiction of the federal court and were completely preempted by the National Flood Insurance Act (NFIA), 42 U.S.C. §4072. Plaintiffs timely filed a motion to remand, which is now before the court for a report and recommendation. Oral argument on plaintiffs' motion to remand was held on June 9, 2011.

**Arguments of the Parties**

Plaintiffs argue that the claims asserted in the petition are based on insurance practices within the construction and homeowner's insurance industries in Louisiana, and that the claims do not involve flood insurance policies or claims issued, administered, or adjusted under flood insurance policies (rec. doc. 6-1). Additionally, plaintiffs contend that all of their claims are based on state laws, and note that they specifically state in their petition that their claims are "brought entirely and exclusively under Louisiana state law and [are] not intended, directly or implicitly, to invoke or assert any federal causes of action." (rec. doc. 1-4, ¶ 5). Thus, plaintiffs conclude that there is no basis for this court to exercise subject matter jurisdiction based on the NFIA. Furthermore, plaintiffs suggest that *if* the court were to find that federal question jurisdiction exists as to the claims against State

---

[1] The sole issue before the court on plaintiffs' motion to remand is whether the court has subject matter jurisdiction based on federal question. The issue of whether plaintiffs can prevail on their price-fixing claim as plead is not before the court.

Farm, then the court should decline to exercise supplemental jurisdiction over the unrelated state law claims against Farmers and Xactware. Finally, plaintiffs request reimbursement for their costs, expenses, and attorneys' fees associated with filing the motion to remand.

Defendants[2] respond by arguing that, even though not mentioned anywhere in the petition, plaintiffs only connection to defendant State Farm is that State Farm at one time adjusted (using the Xactimate software) and compensated plaintiffs under flood policies issued to plaintiffs by State Farm (rec. docs. 1 and 10). Defendants conclude, therefore, that plaintiffs' price-fixing claim against State Farm, in combination with those allegations that State Farm breached its indemnity and fiduciary duties, must actually be claims against State Farm arising out of State Farm's handling of plaintiffs' flood insurance claim, over which this court has exclusive jurisdiction and which claims are completely preempted by the NFIA. Defendants also argue that federal question jurisdiction based on the NFIA is facially apparent from plaintiffs' petition, and plaintiffs' post-removal stipulation that they do not seek damages under the flood policies is insufficient to overcome the allegations in the petition. Defendants request that the court exercise supplemental jurisdiction over the state law claims against Farmers and Xactware. Finally, defendants oppose plaintiffs' request for attorneys' fees and costs.

**Law and Discussion**

The party seeking removal bears the burden of demonstrating that a federal question exists. *Gutierrez v. Flores*, 543 F.3d 248 (5th Cir. 2008). A federal question exists "if there appears on the face of the complaint some substantial, disputed question of federal

---

[2] State Farm removed this matter with the consent of all other defendants. All three defendants join in the opposition to plaintiffs' motion to remand (rec. doc. 10).

law." *In re Hot-Hed, Inc.*, 477 F.3d 320 (5th Cir. 2007), citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Whether a case is removable upon the basis of federal question jurisdiction is to be determined by the allegations of plaintiff's "well-pleaded complaint" as of the time of removal. *See, e.g.,Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001); *Avitts v. Amoco Production Co.*, 53 F.3d 690, 693 (5th Cir. 1995). Plaintiff is the master of his complaint, and he may avoid federal jurisdiction by exclusive reliance on state law. *Lorenz v. Texas Workforce Com'n*, 211 Fed. Appx. 242, 244, 2006 WL 3102581, 2 (5th Cir. 2006). Thus, if, on its face, the plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking. *Hart v. Bayer Corp.,* 199 F.3d 239, 244 (5th Cir. 2000), *citing Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

Plaintiff, however, cannot defeat removal of a federal claim by "artfully pleading" it as a state law claim. *Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.*, 271 F.3d 188 (5th Cir. 2001), citing *Rivet v. Regions Bank of La.,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim. *Bernhard v. Whitney Nat. Bank*, 523 F.3d 546 (5th cir. 2008), citing *Rivet v. Regions Bank of La., supra.* The Fifth Circuit has explained that the artful pleading doctrine applies *only* where state law is subject to complete preemption. Id., citing *Terrebonne Homecare, Inc. v. SMA Health Plan*, Inc., 271 F.3d 186 at 188-89. Under the complete preemption doctrine, "what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because 'the federal statute' so forcibly and completely displaces

state law that the plaintiff's cause of action is either wholly federal or nothing at all." *New Orleans & GulfCoast Ry. Co. v. Barrois*, 533 F.3d 321, 330 (5th Cir.2008), citing *Hoskins v. Bekins Van Lines*, 343 F.3d 769 at 773 (5th Cir. 2003) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir.1995)). Federal question jurisdiction, therefore, exists when a state law is completely preempted because "there is, in short, no such thing as a state-law claim." *Bernhard v. Whitney Nat. Bank*, 523 F.3d 546 at 553, citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

Defendants argue that plaintiffs' price-fixing claim against State Farm and the reference in the price-fixing section to a breach of indemnity and fiduciary duties is really a claim challenging State Farm's handling of plaintiffs' flood insurance claim, which is within the exclusive jurisdiction of this court and completely preempted by the NFIA. See 42 U.S.C. §4072. The Fifth Circuit explained that "[b]y enacting the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 et seq., Congress established the [National Flood Insurance Program] to make flood insurance available on reasonable terms and to reduce fiscal pressure on federal flood relief efforts." *Campo v. Allstate Insurance Co.*, 562 F.3d 751, 754 (5th Cir. 2009). FEMA administers the NFIP. Id. Private insurers are able to issue flood insurance policies in their own names under the guidelines of the Write Your Own (WYO) program. Id. Under the WYO program, the federal government underwrites the policies and private WYO carriers perform significant administrative functions including "arrang[ing] for the adjustment, settlement, payment and defense of all claims arising from the policies." Id., citing *Gallup v. Omaha Prop. & Cas. Co.*, 434 F.3d 341, 342 (5th Cir.2005). WYO carriers must issue policies containing the exact terms and conditions of the Standard Flood Insurance Policy (SFIP) set forth in FEMA regulations. Id., citing 44 C.F.R. §§

61.4(b), 62.23(c)-(d) (2008) (mandating use of SFIP terms); 44 C.F.R. pt. 61, app. A(1) (setting forth SFIP terms); see also *Darouiche v. Fidelity Nat. Ins. Co.*, 2011 WL 777874 (5th Cir. 2011); 44 C.F.R. pt. 61, app. A(1).

The NFIA and the SFIP both provide that federal courts have exclusive jurisdiction over disputes regarding the adjustment of flood claims. See 42 U.S.C. §4072 (NFIP)[3] and 44 C.F.R. Pt. 61, App. A(1), art VII(R) (SFIP)[4]. Further, the SFIP provides that all disputes arising from claims made for coverage under the SFIP and from "the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. §4001, et seq.), and Federal common law." 44 C.F.R. Pt. 61, app. A(1), art. IX. Based on the language in the SFIP, courts have held that state law claims relating to the "handling" of flood insurance

---

[3] Section 4072, entitled *Adjustment and payment of claims; judicial review; limitations; jurisdiction,* provides as follows:
> In the event the program is carried out as provided in section 4071 of this title, the Director shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. §4072.

[4] The SFIP provides as follows:
You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within one year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the covered property was located at the time of loss. This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

44 C.F.R. Pt. 61, App. A(1), art. VII(R).

policies are expressly preempted by the NFIA. See *Campo v. Allstate Insurance Co.*, 562 F.3d 751 (5th Cir. 2009); *Borden v. Allstate Insurance Co.*, 589 F.3d 168 (5th Cir. 2009).[5]

Thus, the court must determine whether plaintiffs' price-fixing claim against State Farm is a claim over which this court has exclusive jurisdiction pursuant to the NFIA and is preempted by the NFIA.

A review of plaintiffs' 16-page, well-pleaded petition reveals that plaintiffs make very few allegations concerning State Farm (rec. doc. 1-4). Plaintiffs do allege facts regarding State Farm's relationship with Farmers, which suggest that Farmers adopted the use of the Xactimate software after consultation with State Farm. Id. No where in the petition is there any reference whatsoever concerning any prior incidents where State Farm issued policies of flood insurance to plaintiffs or "handled" plaintiffs' claim under the State Farm flood policies. In fact, the petition contains no reference to flood insurers/insurance in general or the handling of flood insurance claims. What plaintiffs do allege is that Farmers and State Farm conspired to devalue claims and to reduce payouts through the use of the Xactimate software in the construction and homeowner's insurance industries, as opposed to flood insurance industry, and the one disputed claim set out in the petition is a claim under plaintiffs' homeowner's policy.

For example, plaintiffs begin by explaining that the alleged conspiracy has affected "competition and fair trade within both the construction and homeowners' insurance industries in Louisiana" (rec. doc. 1-4, ¶1). Plaintiffs explain that as a result of the alleged

---

[5] Courts have held that federal law does not preempt state law flood insurance procurement-based claims. See *Campo*, supra at 757.

conspiracy, "Louisiana insureds were forced to buy property insurance (commercial or homeowner) which likely would never provide full coverage for a loss, and thus, in addition to a short of the claim payment, the premium paid was also artificially inflated" (¶3); plaintiffs describe State Farm and Farmers as insurers which "write policies of insurance covering immovable property, commercial and residential, in the State of Louisiana" and Xactware as an entity which "writes software programs utilized by Insurers to value covered immovable property damage, commercial and residential, in the State of Louisiana" (¶9); and plaintiffs allege that ISO is a "leading provider of statistical, actuarial, and underwriting information for the property/casualty insurance and risk management industries" (¶16).

Furthermore, plaintiffs' petition focuses to a large extent on the homeowner's policy issued to plaintiffs by Farmers and on Farmers actions to standardize the mold exclusion and mold remediation pricing within the homeowner's insurance industry (rec. doc. 1-4, ¶¶25-31, 42-53). All of the facts alleged under the "Facts" section of plaintiffs' petition in support of plaintiffs' claims relate to Farmers' handling, adjustment, and payment of plaintiffs' homeowner's claim and to Farmers' denial of plaintiffs' mold claim under plaintiffs' homeowner's insurance policy with Farmers. Id., ¶¶42-53. Based on the facts alleged, plaintiffs' mold claim is a result of wind and rain from Hurricane Gustav and not from a flood. Finally, plaintiffs specifically state in their petition that their claims are "brought entirely and exclusively under Louisiana state law and [are] not intended, directly, or implicitly, to invoke or assert any federal causes of action." Id., ¶5.

Thus, plaintiffs' well-pleaded petition does not mention flood, flood insurers/insurance, or the handling, adjustment, payment of a flood claim, much less contain allegations specifically against State Farm based on the adjusting or handling of

a flood claim.⁶ The only claims alleged against State Farm arise under La. R.S. 51:121, et seq. for conspiring to fix prices, restrain trade, and lessen competition, and there is no indication from the facts alleged that this claim is based on the policies of flood insurance issued to plaintiffs by State Farm or on State Farm flood policies, in general.

Defendant State Farm nevertheless argues that plaintiffs' current claim against State Farm must arise out of the prior policies of flood insurance issued by State Farm to plaintiffs because that is the only relationship between the parties (rec. docs. 1 and 23). The question, however, is not whether plaintiff has alleged a viable claim against State Farm, but rather, whether he has alleged a federal claim. Plaintiffs' well-pleaded petition alleges only state law claims, and the additional information offered by State Farm indicating that plaintiffs had a prior relationship with State Farm as a result of flood policies issued to plaintiffs by State Farm in the past does not convert plaintiffs' state law claims to federal claims arising under the NFIA. Whether plaintiffs could have asserted a flood claim against State Farm, meant to assert a flood claim against State Farm, or may in the future attempt to assert a flood claim against State Farm based on the flood policies issued to them by State Farm does not mean that plaintiffs' *did* assert a claim based on the flood policies in the petition they filed.⁷

---

⁶ In fact, plaintiffs represent that the claim that they filed under their State Farm flood insurance policy was paid on October 7, 2008, and finally resolved on January 30, 2009; therefore, any potential dispute plaintiffs might have in connection with their flood claim would be barred by the one-year prescriptive period set forth in 42 U.S.C. §4072 (rec. doc. 6-1).

⁷ Plaintiffs also submitted additional information in a post-removal stipulation which specifically states that the claims asserted in their petition "in no way assert or involve, directly or indirectly, any allegations or claims involving, arising out of, or related to, the two (2) flood insurance policies issued to plaintiffs by defendant [State Farm], or any claims made or monies paid under such policies" (rec. docs. 1-4 and 19). Defendants filed an opposition to the post-removal stipulation. Whether a case is removable based on federal question jurisdiction is determined by the allegations in the well-pleaded complaint at the time of removal. Because the basis for federal jurisdiction is established at the time of removal, generally speaking, a post-

In summary, there is no indication from the face of plaintiffs' well-pleaded petition that their state law claims even involve flood insurers or flood insurance, much less make a claim under a flood policy. As a result, the state law claims asserted by plaintiffs simply do not fall into the category of claims that the NFIA and SFIP provide are within the exclusive jurisdiction of this court or that are preempted by the NFIA. Thus, this court does not have federal question jurisdiction over this matter, and plaintiffs' motion to remand should be granted.[8] Consequently, the court is without the authority to exercise supplemental jurisdiction over plaintiffs' remaining state law claims. See 28 U.S.C. §1367.

Finally, plaintiffs seek reimbursement of their attorney's fees, costs, and expenses incurred in connection with the filing of the motion to remand. Section 1447(c) provides that an order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The award is within the discretion of the district court and is to be guided by the standard that, "[a]bsent unusual circumstances, courts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonably basis for seeking removal." *Martin v. Franklin Capital*

---

removal stipulation offered to clarify the basis of federal jurisdiction is not considered unless the court finds that the allegations in the petition are ambiguous. See *Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia, S.A.*, 988 F. 2d 559 (5th Cir.1993). Similarly, a post-removal amendment to a petition that deletes all federal claims, leaving only state law claims, does not divest the district court of federal question jurisdiction. *Hook v. Morrison Milling Co.*, 38 F.3d 776, 780 (5th Cir. 1994). The Fifth Circuit has noted that "[i]n a jurisdictional inquiry, we look at the complaint as it existed at the time the petition for removal was filed, regardless of any subsequent amendments to the complaint." Id.(citations omitted). Thus, *if* plaintiffs' petition asserted a federal claim, plaintiffs' post-removal stipulation would not divest the court of jurisdiction. Based on a complete review of the plaintiffs' well-pleaded petition, however, it is clear that plaintiffs did not assert a federal claim or a state law claim that is preempted by the NFIA; therefore, it is unnecessary for the court to consider the additional information offered by the parties.

[8] The court notes that *if* plaintiffs amend their petition to assert a federal claim, including a claim arising under the NFIA, defendants could presumably remove this action once again.

*Corp.*, 546 U.S. 132, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." Id. at 711. An analysis of whether plaintiffs' petition contains a federal cause of action or a state cause of action that is preempted by federal law requires a weighing and balancing of several factors. Thus, defendants did not lack an objectively reasonable basis for removing this matter considering all of the factors that had to be analyzed to reach the court's conclusion, and plaintiffs' request for attorney's fees and costs should be denied. Accordingly,

**IT IS RECOMMENDED** that plaintiffs' motion to remand (rec. doc. 6) should be **GRANTED IN PART AND DENIED IN PART,** in that the motion to remand should be **GRANTED** and this matter should be remanded to the 18th Judicial District Court, Parish of West Baton Rouge, State of Louisiana, and that the motion for attorney's fees should be **DENIED.**

Signed in Baton Rouge, Louisiana, on July 22, 2011.

MAGISTRATE JUDGE DOCIA L. DALBY

**KRISTOPHER KAHAO AND KENDRA CARTER KAHAO**

**VERSUS**

**XACTWARE SOLUTIONS, INC., ET AL.**

**CIVIL ACTION**

**NUMBER 10-846-JJB-DLD**

## **NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 (fourteen) days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on July 22, 2011.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**MAGISTRATE JUDGE DOCIA L. DALBY**